IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| CAROL LYNN FINNEGAN, | * | Chapter 13 |
| Debtor | * | |
| | * | Case No.: 1-06-bk-00198MDF |
| SOVEREIGN BANK, F.S.B., | * | |
| Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| CAROL LYNN FINNEGAN, | * | |
| Respondent | * | |

## OPINION

### Procedural and Factual History

Before the Court is the objection of Sovereign Bank, F.S.B. ("Sovereign") to the confirmation of the chapter 13 plan filed by Carol Lynn Finnegan ("Debtor"). Sovereign, which filed a proof of claim for $22,577.68 secured by a 2004 Dodge Grand Caravan, objects to Debtor's proposal to cram down its claim to the value of the collateral. Debtor's chapter 13 plan describes the treatment of Sovereign's claim as follows: "Loan secured by lien on vehicle will be paid lesser of fair market value of collateral (cramdown $11,887.00) – at lesser of prime rate of interest, 7.50% or contract rate of interest." Sovereign's objection asserts that the plan cannot be confirmed because Debtor's proposed treatment of its claim is prohibited by 11 U.S.C. § 1325(a)(9). If Sovereign's claim is not subject to the provisions of § 1325(a)(9), the bank argues that the value assigned to the collateral does not reflect the replacement value of the property as mandated by 11 U.S.C. § 506(a).

1

Debtor purchased the Grand Caravan from Brenner Motors on March 4, 2004. Thereafter, the debt was assigned to Waypoint Bank, Sovereign's predecessor. Debtor filed her bankruptcy petition on February 10, 2006, 710 days after she incurred the debt. The vehicle is titled in Debtor's name although it was purchased for Debtor's husband to use in his business. Debtor testified that the vehicle had 85,000 miles on the date of the hearing and that it was in fair condition. She estimated the vehicle was worth approximately $11,000.00 after reviewing values in Kelley Blue Book online.[1] On the schedules filed with her petition, Debtor stated that the vehicle's odometer read 70,100 miles. Sovereign introduced evidence that the NADA book retail value of the vehicle as of the month of the filing of the petition was $15, 325.00, subject to a high mileage deduction of $1,725.00, or $13,600.00

A hearing was held in this matter on May 17, 2006 at which time the Court took the issue raised by Sovereign's objection under advisement. The matter is ready for decision.[2] For the reasons that follow, I conclude that Sovereign's objection to confirmation is overrruled in part and sustained in part.

**Discussion**

*a. Applicability of the "hanging paragraph"*

Before October 17, 2005, Sovereign's objection to the treatment of its claim in Debtor's plan would have been limited to the value set for the collateral in the plan and the interest rate

---

[1] Debtor's counsel stated that the value of the vehicle in the plan was calculated by averaging the retail and wholesale values of the vehicle and subtracting $1,725.00 for high mileage.

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J). This Opinion constitutes the findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, which is made applicable to contested matters under Fed. R. Bankr. P. 9014(c).

payable over the term of the plan. Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), under § 506(a), a claim secured by personal property could be split into a secured claim equal to the value of the collateral and an unsecured claim for the balance of the debt.[3] But the addition of § 306(b) of BAPCPA to 11 U.S.C. § 1325(a) limits a debtor's ability to bifurcate a claim secured by a motor vehicle. The relevant provisions of section 1325(a)(9)[4] provide as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325(a)(9). This provision prohibits a debtor from bifurcating a claim if the claim is based on (1) a purchase money security interest; (2) on a motor vehicle; (3) purchased by the debtor; (4); within the 910-day period preceding the filing of the petition; (5) and the vehicle is acquired for the personal use of the debtor.

---

[3] Section 506(a)(1) provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1).

[4] The language at issue appears immediately after subsection (a)(9) of section 1325, but it relates to subsection (a)(5) and "has nothing to do with subsection (a)(9)." *In re Quevedo*, 345 B.R. 238, 239, n. 1 (Bankr. S.D. Cal. 2006); *See also In re Lowder*, 2006 WL 1794737 (Bankr. D. Kan. 2006). For that reason, the language at issue "has become known as the 'hanging paragraph' of § 1325(a)." *In re Sparks*, 346 B.R. 767, 769 (Bankr. S.D. Ohio 2006). *See also In re Brown*, 346 B.R. 868 (Bankr. N.D. Fla. 2006); *Lowder*, at *2; *In re Jackson*, 338 B.R. 923, 925 (Bankr. M.D. Ga. 2006). Following the lead of these and many other courts, for convenience purposes the statutory language at issue will be referred to as "the hanging paragraph."

Debtor testified that Brenner Motors knew that she was purchasing the vehicle for her husband, who had filed a prior bankruptcy that would have appeared on his credit report. She further testified that the vehicle was used almost exclusively by her husband in his graphic design business and that he stored materials used in his business in the vehicle. Tax returns introduced established that Debtor's husband claimed the vehicle and related expenses as business deductions for federal income tax purposes. Debtor's schedule of expenses filed with her petition does not provide for the monthly installment payments for the vehicle, which Debtor testified was paid by her husband as a business expense.

At issue in this case is the definition of "personal use" as it is used in § 1325(a). Debtor contends that although the vehicle is titled in her name, it was acquired for her husband's use in his business. Therefore, the hanging paragraph in § 1325(a)(9) does not apply, and she may invoke § 506(a) to bifurcate Sovereign's claim. I have identified only two published opinions that address the definition of "personal use" in the hanging paragraph. In *Lowder, supra* at n. 3, the debtor purchased a vehicle to commute to her place of employment. She asserted that the restrictions on cram down in the hanging paragraph were inapplicable to her case because she used the vehicle to drive to work and not solely for "personal use." The *Lowder* court observed that "[w]hen a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph . . . will not apply." *Lowder,* 2006 WL 1794737, at *4. But merely acquiring a vehicle for various uses, one of which is to drive to and from work, does mean that the vehicle is for business purposes rather than personal use. *Id.* In *dicta*, the bankruptcy court noted that if the debtor had "used [the vehicle] within the scope of her employment, this would be a harder question." *Id.* In *Jackson, supra* at n. 3, the bankruptcy court held that the hanging paragraph did

4

not prevent bifurcation of a claim secured by a vehicle purchased by a debtor for the personal use of his non-debtor wife. The court narrowly construed the phrase "personal use *of the debtor*" to reach its decision. Personal use of the debtor is distinct from personal use of a debtor's household or his dependents *Jackson*, 338 B.R. at 925. In the case at bar, the vehicle was not purchased for the personal use "of the debtor." It was not even purchased for the "personal" use of Debtor's husband. The vehicle was acquired by Debtor for her husband's use in his business because his credit history prevented him from obtaining the loan in his own name. The hanging paragraph of § 1325(a)(9) does not apply simply because Debtor took title to the vehicle. The relevant questions are: for whose use and for what purpose was the vehicle purchased? And the answers in this case are: for Debtor's husband and for business purposes. Therefore, the provisions of the hanging paragraph in section 1325(a)(9) do not apply to the case at bar, and Debtor may bifurcate Sovereign's claim.

      b.      *Section 506(a) valuation*

Having determined that Debtor may bifurcate Sovereign's claim, the next issue is the value to be assigned to the secured portion of the claim. Prior to the enactment of BAPCPA, the United States Supreme Court determined that replacement value, rather than liquidation value, was the appropriate § 506(a) standard in chapter 13 cases. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). "Replacement value" is "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Id.* at 959 n.2, 117 S.Ct. 1879. In *Rash*, the Supreme Court did not find that replacement value is always synonymous with retail value. "[W]here the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may

5

be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Id.* at 964, n. 6., 117 S.Ct. at 1887. In chapter 7 or chapter 13 cases filed by individuals after October 17, 2005, § 506(a)(2) provides that the value of personal property is the "replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing." Section 506(a)(2) also provides that for "property acquired *for personal, family, or household purposes*, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2) (emphasis added). In the within case, the second sentence of § 506(a) is inapplicable because the vehicle was acquired for business, not personal, family or household purposes.

The use of the phrase "replacement value" suggests that Congress intended to codify the valuation standard of *Rash*. *See In re Nice*, 2006 WL 3360578, *3 (Bankr. N.D. W. Va.). The Supreme Court reasoned that a creditor should not receive the value of items the debtor does not receive. Congress apparently agreed, in part, stating that only costs of sale or marketing should be included in "replacement value."[5] The value should exclude amounts attributable to warranties, inventory storage, and reconditioning, which were specifically cited as exclusions in *Rash*. BAPCPA also resolved another issue not decided in *Rash* – the appropriate date for valuing the collateral. Section 506(a)(2) clearly provides that the date the petition is filed is the

---

[5]Congress does not explain the term "costs of sale or marketing." Debtor did not argue that Sovereign's value for the vehicle included these costs.

point at which a court should set the value of a secured claim. Therefore, in the instant case, I must determine the replacement value of the 2004 Dodge Grand Caravan as of February 10, 2006.

To assist in determining replacement value, bankruptcy courts have developed various standards using market reports on vehicle sales that are readily available to the public in both book form and on the internet. The most frequently used reference is the National Automobile Dealers Association ("N.A.D.A.") guidebook, and, to a lesser degree, the Kelley Blue Book. These reports have been found by numerous courts to be admissible under Federal Rule of Evidence 801(17), which provides that market reports or compilations relied upon by the public or by persons in particular occupations fit within the hearsay exception. *In re McElroy,* 339 B.R. 185, 188 (Bankr. C.D. Ill. 2006); *In re Henry*, 328 B.R. 529, 536, n. 7 (Bankr. S.D. Ohio 2004); *In re Bouzek,* 311 B.R. 239, 243 (Bankr. E.D. Wis. 2004); *In re Stark*, 311 B.R. 750, 756 (Bankr. N.D. Ill. 2004). Although many courts use the reports, there is no unanimity as to how they should be applied. *See In re Nice*, 2006 WL 3360578, *2 (citing cases).[6] One bankruptcy judge in the Northern District of West Virginia has held that the presumptive replacement value for the district, determined by averaging the N.A.D.A. retail and trade-in values, is unaffected by the BAPCPA amendments to § 506(a). *Id.* However, at least one bankruptcy court has determined that BAPCPA has altered the meaning of "replacement value" in § 506(a)(2). *In re Eddins*,

---

[6]Approaches to valuing vehicles using market reports include: average of N.A.D.A. wholesale and retail values, *In re Getz*, 242 B.R. 916, 919 (6th Cir. BAP 2000); 10% deduction from N.A.D.A. retail value, *In re Mayland,* 2006 WL 1476927, *3 (Bankr. M.D.N.C.); 95% of N.A.D.A. retail value, *In re Mitchell*, 320 B.R. 687, 689 (Bankr. E.D. Mo. 2005); average of N.A.D.A. retail and Kelley Blue Book private party value, *In re Gray*, 285 B.R. 379, 384 (Bankr. N.D. Tex. 2002).

Case 1:06-bk-00198-MDF    Doc 25    Filed 11/30/06    Entered 11/30/06 15:07:43    Desc
Main Document      Page 7 of 10

2006 WL 3257142, *3 (Bankr. W.D. Okla.). Specifically, a bankruptcy judge in the Western District of of Oklahoma has held that the second sentence in § 506(a)(2) requires that retail value be used as the starting point for valuing a vehicle under the section. The court based its holding on the language in the second sentence that "property acquired for personal, family, or household purposes, replacement value shall mean the *price a retail merchant would charge* for property of that kind considering the age and condition of the property at the time value is determined." *Id.* In the within case, the property was not purchased for personal use, so it is unnecessary to determine whether the second sentence in § 506(a)(2) imposes a standard different from the "replacement value" standard in the first sentence. Only the first sentence applies in the instant case, which uses the *Rash* term "replacement value" with the caveat that no deduction may be made for "costs of sale or marketing." This court has not adopted a standard guideline or benchmark for valuing vehicles, although market reports, including the N.A.D.A. guidebook and the Kelley Blue Book, have been admitted to establish value.[7] Therefore, the court will examine the evidence offered by the parties to establish the value of the vehicle.

A debtor bears the burden of proof on the issue of valuation under § 506(a). *In re Shropshire,* 284 B.R. 145 (Bankr.N.D.Ala. 2002); *In re Brown,* 244 B.R. 603 (Bankr.W.D.Va. 2000); *In re Roberts,* 210 B.R. 325 (Bkrtcy.N.D.Iowa,1997); *In re Webb,* 99 B.R. 283 (Bankr.E.D.Pa. 1989). Debtor testified that the vehicle was in fair condition. She stated that she

---

[7]I agree with the observation by Judge Benjamin Goldgar that the guidance provided by *Rash* "precludes the expedient use of uniform starting points, benchmarks, polestars, shortcuts, and rules of thumb. . . .Replacement value depends on the 'type of debtor and the nature of the property.'" (citations omitted) *In re Gonzalez*, 295 B.R. 584, 590-91 (Bankr. N.D. Ill. 2003).

8

believed the vehicle was worth about $11,000.00 based upon the "Private Party Value"[8] of $11,595.00 in Kelley Blue book for a vehicle with 90,000 miles that was the same year and model of her vehicle, but in excellent condition. The value offered by Debtor was as of the date of the hearing, not the petition date. Debtor admitted that her vehicle had 70,100 miles at the time the petition was filed, and although she described the vehicle as being in "fair" condition, the only damages she identified were minor cosmetic defects.[9] The lower actual mileage on her vehicle would support a slightly higher value, but the less than excellent condition would suggest a lower one. Adjustments also must be made because Kelley Blue Book uses Private Party Value, which excludes costs of sales and marketing expenses that § 506(a)(2) specifically states should be included in computing "replacement value." No evidence was presented, however, from which the Court could determine the amount of these expenses.

Sovereign introduced the N.A.D.A. guidebook retail value of $15,325.00 for the same model and year vehicle for the month in which the petition was filed, February 2006. When reduced by $1,725.00[10] for high mileage, the N.A.D.A. retail value is $13,600.00. As observed

---

[8]The Kelley Blue Book website states that "Private Party Value is what a buyer can expect to pay when buying a used car from a private party. The Private Party value assumes that the vehicle is sold "As Is" and carries no warranty (other than the continuing factory warranty). The final sale price may vary depending upon the vehicle's actual condition and local market conditions."

[9]On its website, Kelley Blue Book states that "'fair'condition means that the vehicle has some mechanical or cosmetic defects and needs servicing but is still in reasonable running condition. This vehicle has a clean title history, the paint, body and/or interior need work performed by a professional. The tires may need to be replaced. There may be some repairable rust damage." Debtor provided no testimony as to the condition of the tires, the existence of rust damage or whether the vehicle had any mechanical defects.

[10]Debtor stated that the mileage adjustment in the N.A.D.A guidebook was $1,675.00 and Sovereign stated that the appropriate adjustment was $1,725.00. This discrepancy was not resolved.

by other courts, however, N.A.D.A. valuations tend to be higher than "replacement value" as contemplated in *Rash.* The N.A.D.A. guidebook does not consider a vehicle's condition, and the stated value may include warranties, reconditioning, and other services excluded by *Rash. In re McElroy,* 339 B.R. at 189; *In re Gonzalez*, 295 B.R. at 587. Considering Debtor's undisputed testimony that the vehicle has minor cosmetic defects, the adjusted value of $13,600.00 advanced by Sovereign is probably higher than the actual value of Debtor's vehicle.

It is impossible to precisely determine which value – $13,600.00 or $11,887.00 – more accurately reflects the true value of the vehicle on the date the petition was filed. Neither value is fully supported by the evidence. Therefore, in the exercise of the Court's discretion, I find that the value of the vehicle for purposes of bifurcating Sovereign's claim under § 506(a) is $12,500.00. I further find that the appropriate interest rate payable on the secured claim in accordance with *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), is the prime rate of 7.5% plus a risk factor of two percent for a total rate of 9.5%.

An appropriate Order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: November 30, 2006